IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Eugene Way, | ) | C/A No. 1:10-1134-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I.    Relevant Background

   A.    Procedural History

In December 2004, Plaintiff filed applications for DIB under the Social Security Act ("the Act"), 42 U.S.C. §§ 401  433. Tr. at 87. His amended onset date is March 17, 2005. Tr. at 28. His applications were denied initially and upon reconsideration. Tr. at 47  48. On September 15, 2008, Plaintiff had a hearing before an Administrative Law Judge ("ALJ").

Tr. at 25  46 (Hr'g Tr.).  At that hearing, the ALJ noted that the medical information in the record was at least two years old and informed Plaintiff that he planned to order a new consultative evaluation.  Tr. at 45.  The ALJ informed counsel that Plaintiff would receive notice of the consultative examination and would have the opportunity to comment in a supplemental hearing if he chose.  Tr. at 45.  Chris Tountas, M.D. performed the consultative evaluation, and the ALJ sent a copy of Dr. Tountas's report to Plaintiff's counsel via letter dated December 3, 2008.  Tr. at 163  64.  In that letter, the ALJ indicated that Plaintiff could request a supplemental hearing within ten days of receiving the letter.  Tr. at 163.  The ALJ's letter indicated that he would grant a request for a supplemental hearing "unless [he] receive[d] additional records that support[ed] a fully favorable decision [for Plaintiff]."  Tr. at 163.  In a letter dated December 11, 2008, Plaintiff's then-counsel timely requested a supplemental hearing.  Tr. at 167.  Neither the ALJ nor anyone on the Commissioner's behalf contacted Plaintiff or his counsel regarding Plaintiff's request for a supplemental hearing. The ALJ issued an unfavorable decision on January 14, 2009, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 16  24.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1  4.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on May 4, 2010.

B.      Plaintiff's Background and Medical History

Plaintiff was 40 years old as of his amended alleged onset date and has a high school

education.  Tr. at 28 29.  His past relevant work ("PRW") was as a crane operator for the South Carolina Ports Authority, a position he had held for 20 years. Tr. at 109, 122.

      1.    Medical History

Plaintiff complained of neck pain and a cervical MRI was taken on December 21, 2004.  Tr. at 209 10.  The MRI showed some significant bilateral neural foraminal narrowing at multiple levels, degenerative changes, a disc protrusion at C5 C6, and some central canal stenosis. Tr. at 209.  Dr. William Wilson examined Plaintiff on March 17, 2005, and noted clinical evidence of decreased neck motion and weakness in the left upper extremity.  Tr. at 207, 212 24.  On the same day, Dr. Wilson performed a cervical discectomy and fusion at C5 C6 on Plaintiff.  Tr. at 205.  Plaintiff was discharged with a diagnosis of C5 C6 disc herniation and spondylosis resulting in left-sided cervical radiculopathy. Tr. at 205.  Plaintiff did fairly well after the March 2005 surgical procedure, but developed neck pain that radiated down his right upper extremity.  Tr. at 193 94, 226.

In April 2005, pain specialist J. Edward Nolan, M.D. treated Plaintiff for the neck pain with epidural steroid injections. Tr. at 275 78.  Plaintiff also took anti-inflammatory medications, but he continued to experience pain.  Tr. at 193, 275 78.

On May 5, 2005, Plaintiff had a cervical MRI, CT scan, and myelogram, which revealed an open, unobstructed spinal canal, neural foramina, and coarsening of the nerve root sleeves bilaterally at C5 C6.  Tr. at 175 76, 246.  On May 19, 2005, Plaintiff returned to  Dr. Wilson, still complaining of unresolved neck pain after the March 2005 surgery.  Tr. at 193 94, 226.  Dr. Wilson performed the following procedures on Plaintiff on May 19,

2005:  C6  C7 anterior cervical discectomy and decompression; C6  C7 anterior cervical interbody fusion; and anterior cervical plating at C5  C6 and C6  C7 with removal of the previously inserted C5  C6 plate.  Tr. at 201.

On August 23, 2005, Plaintiff returned to Dr. Nolan, who examined Plaintiff and found that he had intact bilateral sensation in the upper and lower extremities, no reflex of the right biceps, moderate pain in the cervical paraspinous musculature, right cervical radiculopathy at C7  C8, and normal coordination and muscle tone in the upper and lower extremities.  Tr. at 281.  Dr. Nolan assessed Plaintiff with cervical disc displacement and cervical radiculitis, gave him an epidural steroid injection, and referred him to physical therapy.  Tr. at 281.

On October 12, 2005, Plaintiff told Dr. Wilson that "overall [he was] doing much better[,]" but that he still had intermittent numbness and tingling.  Tr. at 285  86.  On examination, Dr. Wilson noted Plaintiff had an overall good range of motion of the neck, intact sensation, some mild atrophy in the right forearm, and normal strength in the upper extremities.  Tr. at 286.

On October 24, 2005, Plaintiff returned to Dr. Nolan and indicated the August 2005 injection helped with the right-arm tingling, but that he still ached with increased activity. Tr. at 300.  He was diagnosed with cervical disc displacement and cervical radiculitis.  Tr. at 300.  He returned to Dr. Nolan in December 2005 and March 2006, was diagnosed with cervical disc displacement and thoracic facet arthritis, and received additional epidural steroid injections.  Tr. at 298  300, 393.

In November 2005, Katrina Doig, M.D., a state agency physician, reviewed Plaintiff's records and completed a Physical Residual Functional Capacity ("RFC") form. Tr. at 288 95. Dr. Doig determined that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. Tr. at 289.

On May 10, 2006, Plaintiff saw Dr. Wilson and told him he was "doing great." Tr. at 306. He noted Plaintiff had some stabbing pain between the shoulder blades and some recurrent left arm pain. Tr. at 306. On examination, Dr. Wilson found Plaintiff had moderate limitations in cervical range of motion and normal muscle strength in both upper extremities. Tr. at 306. Dr. Wilson released Plaintiff with maximum medical improvement, opining that Plaintiff would be limited to sedentary work with no overhead work. Tr. at 306.

On June 13, 2006, Joseph Gonzalez, M.D., a state agency physician, reviewed Plaintiff's records and completed a Physical RFC form. Tr. at 336 43. Dr. Gonzalez determined Plaintiff could perform the exertional requirements for light work. Tr. at 337.

On June 27, 2006, pain specialist Timothy Zgleszewski, M.D., performed an independent medical evaluation of Plaintiff. Tr. at 402. Plaintiff reported that he continued to have constant neck pain, that lying down eased the pain somewhat, and that medication did a "fairly good job" of controlling his symptoms. Tr. at 402. Dr. Zgleszewski's clinical findings showed decreased range of motion and spasm in the cervical spine consistent with the prior cervical disc injuries at C5 C7. He recommended continued use of Ultram and Ibuprofen. Tr. at 402 03. Dr. Zgleszewski noted that Plaintiff was at maximum medical

5

improvement and did not need any further surgical intervention.  Tr. at 403.  He opined that Plaintiff could perform a sedentary position that did not require him to continuously or repetitively look up or down.  Tr. at 403.

Other medical evidence shows treatment for depression. Records from the Medical University of South Carolina show two admissions on September 19, 2005, and January 31, 2006, following episodes in which Plaintiff announced that he was trying to "drink himself to death."  Tr. at 181 82, 309 15.  Mental status evaluation after the second admission showed significant impairment of both insight and judgment with a blunt affect and a hopeless, anhedonic mood. The discharge diagnoses were depression, bipolar disorder, and substance-induced mood disorder.  Tr. at 309 15.

On July 7, 2006, Robert E. Brabham, Ph.D. performed a psychological evaluation. Tr. at 394  401.  Dr. Brabham diagnosed pain disorder, generalized anxiety disorder, and no further alcohol or substance abuse.  Tr. at 399 400.  He noted that Plaintiff's mental diagnoses were in addition to his other physical medical problems, including marked limitations in the range of motion in his neck.  Tr. at 394.

   2.  Post-Hearing Records

On October 21, 2008, following the September 15, 2008 administrative hearing, Dr. Tountas performed a consultative physical examination of Plaintiff at the request of the ALJ. Tr. at 414 18.  Dr. Tountas completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) and opined that Plaintiff could continuously lift up to ten pounds, occasionally lift up to twenty pounds, sit for eight hours, stand for up to four hours

6

at a time, and walk for two hours at a time.  Tr. at 406  07.

On December 3, 2008, the ALJ sent Dr. Tountas's report to Plaintiff's attorney.  Tr. at 170  71.  In the cover letter accompanying Dr. Tountas's report, the ALJ noted that Plaintiff had ten days within which to "request a supplemental hearing at which [he] would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law."  Tr. at 170.  The ALJ's letter also indicated that he would grant Plaintiff's request for a hearing "unless [he] receive[d] additional records that support a fully favorable decision."  Tr. at 170  71. By letter of December 11, 2008, Plaintiff's attorney requested a supplemental hearing.  Tr. at 167.  The ALJ did not respond to that request.  The next communication Plaintiff received from the ALJ was the January 14, 2009 decision in which the ALJ denied benefits.  Tr. at 21  22.

On January 22, 2009, Dr. Nolan noted that Plaintiff had undergone a C5  C6 cervical fusion, but that he continued to have "multi-level central canal and neural foraminal narrowing from C3 to C7."  Tr. at 420.  Dr. Nolan opined that, because of his "chronic neck and radicular arm pain," Plaintiff was "unlikely to be able to be gainfully employed full time even at a sedentary level" and that he would be expected to be absent from work more than four times a month because of his pain.  Tr. at 420.

C.    The Administrative Proceedings

1.    The Hearing

Plaintiff testified he was right-handed and had constant stabbing pain in the middle of his neck that varied from a two to a four on a scale of one to ten, depending on his

activities and that his pain lessened to some degree after his surgery. Tr. at 32 33, 39, 44. He indicated he had difficulty using his left hand, so he "very seldom" used it. Tr. at 33. He said he could not look up or down because of his limited neck motion. Tr. at 36. He testified that sitting upright in a chair or standing for more than 20 minutes at a time increased his pain to a six or an eight, and that he had constant numbness and tingling in his left arm. Tr. at 33 34. He stated he alternated ibuprofen and Tylenol to relieve his pain. Tr. at 35. He also stated he would lie down for an hour or two several times during the day to help relieve the pain. Tr. at 36. He stated he could sit for about 30 minutes at a time and stand about 20 minutes at a time. Tr. at 37. He testified that he could drive a little and that on an average day he would make breakfast and do some light housework. Tr. at 39 40. At the time of the hearing, he indicated he had not seen a doctor since June 2006. Tr. at 42.

### 2.    The Appeals Council's Consideration

Before the Appeals Council, but not before the ALJ, was Dr. Nolan's January 22, 2009 opinion that Plaintiff was not capable of gainful employment, even at the sedentary level, because of the severity and chronic nature of his pain. Tr. at 420. The Appeals Council affirmed the ALJ's decision, noting that it had "considered the reasons you disagree with the decision and the additional evidence listed, [and] found that this information does not provide a basis for changing the Administrative Law Judge's decision." Tr. at 1 3.

## II.    Discussion

Plaintiff alleges the ALJ denied him the right to a fair hearing by violating the agency's procedures regarding the proffer of posthearing evidence. Specifically, Plaintiff

alleges the ALJ obtained a posthearing consultative examination, indicated Plaintiff could request a hearing regarding that evidence and present additional evidence, but then failed to hold the hearing Plaintiff requested. Additionally, Plaintiff alleges the ALJ's consideration of evidence, including Plaintiff's subjective claims, was insufficient and is not supported by substantial evidence. Finally, Plaintiff alleges the ALJ erred by finding him not disabled based on the Medical-Vocational Guidelines (the "Grids") alone, and that he should have obtained testimony from a vocational expert ("VE"). The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    The ALJ's Findings

In his January 14, 2009 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant met the insured status requirements of the Social Security Act through December 31, 2009.

2.    The claimant has not engaged in substantial gainful activity since March 17, 2005, the amended onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairment: cervical degenerative disc disease (20 CFR 404.1521 *et seq.*).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). Sedentary work activity includes lifting and carrying no more than 10 pounds at a time and occasionally lifting and

9

carrying articles like docket files, ledgers, and small tools; sitting for 6 hours in an 8-hour workday and standing/walking for 2 hours in an 8-hour workday.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on June 12, 1964 and was 40 years old, which is defined as a younger individual age 18  44, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferrable job skills (See SSR 82  41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 17, 2005 through the date of this decision (20 CFR 404.1520(g)).

Tr. at 18, 19, 23.

B.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12

consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1; (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant "disabled or not disabled at a step," Commissioner makes determination and "do[es] not go on to the next step.").

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling (SSR) 82 62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the

11

Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264  65 (4th Cir. 1981)*; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*,  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157  58 (4th Cir. 1971); *see Pyles v. Bowen*, 849

12

F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).

Rather, the court must uphold the Commissioner's decision if it is supported by substantial

evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v.

Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the

entire record to assure there is a sound foundation for the Commissioner's findings and that

his conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157 58; *see also Thomas v.

Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the

decision of the Commissioner, that decision must be affirmed "even should the court disagree

with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.     Analysis

       1.     Plaintiff Claims He Was Denied a Fair Hearing

Plaintiff's initial argument is that he was denied due process because the ALJ did not

conduct the supplemental hearing he requested to afford him the opportunity to respond to Dr.

Tountas's consultative examination and findings. The facts related to this issue are not in

dispute and are detailed above. In a nutshell, the ALJ noted at the September 15, 2008 hearing

that he planned to order a consultative evaluation of Plaintiff because medical records in

evidence were more than two years old. Tr. at 45. He told Plaintiff that his counsel would be

notified of the consultative examination and would have the opportunity to comment in a

supplemental hearing. Tr. at 45. Dr. Tountas performed the consultative examination on

October 21, 2008, and the ALJ proffered Dr. Tountas's report to Plaintiff's counsel in a

December 3, 2008 letter. Tr. at 163 64. In the letter, the ALJ indicated that Plaintiff could request a supplemental hearing within ten days and that the ALJ would grant Plaintiff's hearing request "unless [he] receive[d] additional records that support[ed] a fully favorable decision [for Plaintiff]." Tr. at 163. Plaintiff's counsel timely requested a supplemental hearing in a December 11, 2008 letter. Tr. at 167. Neither the ALJ nor anyone on the Commissioner's behalf contacted Plaintiff or his counsel regarding the request for a supplemental hearing, nor did anyone offer Plaintiff or his counsel any opportunity to otherwise comment on Dr. Tountas's report. Pl.'s Br. at 4.

The ALJ issued an unfavorable decision on January 14, 2009, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 16 24. In the decision, the ALJ relies in part on Dr. Tountas's report. Tr. at 21 22. Plaintiff's counsel indicates that he intended to submit the January 22, 2009 opinion of Dr. Nolan to the ALJ at the supplemental hearing that counsel requested and expected to take place. Pl.'s Br. at 5. Because the ALJ did not conduct a supplemental hearing, Plaintiff submitted the January 22, 2009 opinion of Dr. Nolan to the Appeals Council. Pl.'s Br. at 7.

2.    HALLEX

Plaintiff focuses much of his due-process argument on the Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX"),[1] claiming the

---

[1]HALLEX "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Action levels." HALLEX § I-1-0-1. HALLEX is available at http://www.ssa.gov/OP Home/hallex. A copy of § I-2-7-30, "Proffer Procedures," is attached to Plaintiff's Brief. [Entry #9-1].

ALJ committed reversible error by not following the procedures set forth in HALLEX regarding proffering posthearing evidence to claimants. *See generally* HALLEX § 1-2-7-30, Proffer Procedures. HALLEX provides that an ALJ "must proffer all posthearing evidence" to claimant unless the evidence was submitted by the claimant or his representative, the claimant knowingly waived his right to examine the evidence, or the ALJ proposes to issue a fully favorable opinion. HALLEX § I-2-7-30A. HALLEX I-2-7-30B sets out the following requirements for what the ALJ is to include in a proffer letter that sends any posthearing evidence to claimant or his representative:

> The proffer letter must:
>
> • Give the claimant a time limit to object to, comment on or refute the evidence, submit a written statement as to the facts and law that the claimant believes apply to the case in light of the evidence submitted, submit written questions to be sent to the author(s) of the proffered evidence or exercise his or her rights with respect to requesting a supplemental hearing and the opportunity to cross-examine the author(s) of any posthearing report(s) if it is determined by the ALJ that such questioning is needed to inquire fully into the issues.
>
> • Advise the claimant that he/she may request a subpoena to require the attendance of witnesses or the submission of records and the procedures for the requesting and issuance of a subpoena.

HALLEX § I-2-7-30B. The HALLEX Proffer Procedures further indicate the following:

> If the claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision.

HALLEX § I-2-7-30H.

Plaintiff argues that the ALJ erred by failing to follow these procedures in conducting the supplemental hearing Plaintiff requested. Plaintiff claims this deprived him of a forum in

which to respond to Dr. Tountas's posthearing report. In addition, Plaintiff asserts the failure of the ALJ to conduct the supplemental proceeding prevented him from submitting to the ALJ additional evidence relevant to Dr. Tountas's opinion. Plaintiff explains that he obtained that additional evidence, an updated opinion of treating physician Dr. Nolan, and presented it to the Appeals Council after receiving the ALJ's decision and realizing there would be no supplemental hearing. Tr. at 1 4, 168 69. Plaintiff claims that the ALJ's failure to follow these procedures denied him due process and a fair hearing and constitutes reversible error. Pl.'s Br. at 6 7. He seeks reversal for award of benefits or remand for additional consideration.

The Commissioner argues that Plaintiff had a fair hearing. He claims that HALLEX is an internal policy manual that "lacks the force of law." Def.'s Br. at 6. He indicates that the ALJ complied with HALLEX's requirements regarding what to include in a proffer letter, but concedes the ALJ did not conduct the supplemental hearing Plaintiff requested. The Commissioner argues, however, that such error was harmless because Plaintiff has not shown how he was harmed by not having a supplemental hearing. Def.'s Br. at 7.

Plaintiff cites to HALLEX itself, argues that the Commissioner is bound to follow it, and argues the ALJ's failure to do so caused reversible error. Pl.'s Br. at 6 7. He cites no cases in support of his argument. The Commissioner cites *Moore v. Apfel*, 216 F.3d 864 (9th Cir. 2000) and *Christensen v. Harris County*, 529 U.S. 576 (2000), in support of his argument that there was no error because HALLEX is not a binding "force of law." *See* Def.'s Br. at 6. In *Moore*, the Ninth Circuit held that a HALLEX provision regarding assignment of matters after remand did not create substantive rights and was not binding on the Commissioner. 216 F.3d at 868 69.

16

*Christensen* involved interpretation of another agency's guidelines and did not address HALLEX.

The court's independent research reveals there is a circuit split as to whether the Commissioner is bound by HALLEX. In contrast to the Ninth Circuit's *Moore* decision, in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), the Fifth Circuit has determined that, while HALLEX does not have the force of law, if the agency's failure to follow it causes prejudice, there is reversible error. The court stated as follows:

> "[W]here the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." If prejudice results from a HALLEX violation, the result cannot stand.

*Newton*, 209 F.3d at 459 (*quoting Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). The Fourth Circuit has not ruled on this issue. *See Calhoun v. Astrue*, C/A No. 7:08-619, 2010 WL 297823 (W. D. Va. Jan. 15, 2010) (collecting cases and noting Fourth Circuit has not ruled on issue). The undersigned is not aware of any cases from this District that have expressly considered the issue. *Cf. Sims v. Astrue*, C/A No. 6:08-4156-MBS, 2010 WL 619239, *15 16 (D.S.C. Feb. 18, 2010) (looking to HALLEX on another issue and remanding for Commissioner to follow HALLEX). The *Sims* court did not discuss whether HALLEX has the effect of law. Rather, in addressing the Commissioner's argument that a certain exception did not apply, the *Sims* court noted that HALLEX provided otherwise, and remanded for further proceedings in compliance with HALLEX. *Id.*

Under the circumstances of this case, the undersigned is of the opinion that the Fifth

17

Circuit's approach is appropriate. *See Newton*, 209 F.3d at 459. The court acknowledges that HALLEX does not automatically have the force of law, so the Commissioner's failure to follow HALLEX § I-2-7-30's Proffer Procedures does not automatically require reversal or remand. However, as in *Newton*, the court should consider whether the Commissioner's failure to follow HALLEX prejudiced a claimant who has raised the issue.

### 3. Harmless-Error Analysis

The Commissioner claims any error in the failure to follow a portion of the Proffer Procedures was harmless for these reasons: (1) the ALJ discussed Dr. Tountas's posthearing evaluation in his decision and imposed greater restrictions upon Plaintiff's exertional abilities than Dr. Tountas did; (2) Dr. Tountas's findings regarding Plaintiff's exertional abilities were consistent with other record evidence; and (3) the additional information from Dr. Nolan that Plaintiff planned to present at a supplemental hearing would not have impacted the ALJ's decision, and, in any event, that opinion became part of the record before the Appeals Council. Def.'s Br. at 7 8.

In his reply, Plaintiff claims that he has demonstrated harm. He focuses on the Commissioner's argument that there was no harmful error because Dr. Nolan's January 2009 opinion would not have impacted the ALJ's decision. Plaintiff claims that the Commissioner's argument requires the court to engage in improper speculation. Pl.'s Reply at 2 [Entry #12]. Further, Plaintiff argues that the Appeals Council's incorporation of Dr. Nolan's opinion into the record without discussing why it rejected it does nothing to remedy the error. Pl.'s Reply at 2 3.

The undersigned agrees with Plaintiff.  On this record, the court cannot determine what the ALJ's decision would have been if he had conducted the supplemental hearing he promised. To do so would necessarily involve speculation about what Plaintiff or his counsel may have stated regarding Dr. Tountas's opinion at a supplemental hearing and would involve an impermissible substantive review of Dr. Nolan's additional opinion.  His opinion was not before the ALJ, and the Appeals Council rejected it without providing its reasons for so doing.  The undersigned cannot properly determine whether the Commissioner's decision is supported by substantial evidence because it cannot be determined what the ALJ would have learned or determined at a supplemental hearing, nor is it clear what consideration the Appeals Council gave the new opinion from Dr. Nolan.

The undersigned has considered the following regulation regarding the Appeals Council's review of additional evidence such as the January 2009 opinion from Dr. Nolan:

> (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970.  Evidence is new "if it is not duplicative or cumulative." *Wilkins v. Sec'y of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). It is "material" if there is a "reasonable possibility it would have changed the outcome." *Id.*

Although not focused on this regulation, the Commissioner argues Dr. Nolan's letter would not have changed the ALJ's decision for two reasons: (1) it is an opinion on the issue of disability, one reserved for the Commissioner; and (2) Dr. Nolan's opinion would not have changed the ALJ's decision because Dr. Nolan had not seen Plaintiff in years and because his opinion was inconsistent with opinions of other physicians.  Def.'s Br. at 7.

The Commissioner is correct that opinions that determinations regarding whether a claimant is disabled and related legal conclusions are administrative determinations for the Commissioner and not for medical personnel. 20 C.F.R. § 404.1527(e) (noting certain opinions by medical sources    such as being "disabled" or "unable to work"    are not afforded "special significance"); *see Morgan v. Barnhart*, 142 F. App'x 716, 721 22 (4th Cir. 2005) (unpublished) (distinguishing between medical opinions and legal conclusions by physicians that claimant is unable to work or disabled, finding the latter are matters reserved to the Commissioner and are not entitled to heightened evidentiary value).   However, Dr. Nolan's opinion does not fall squarely into that category.  Rather, Dr. Nolan indicates that he has treated Plaintiff since April 2005, that Plaintiff continues to have issues of multi-level central canal and neural foraminal narrowing from C3 to C7, and that his pain would keep him from being a crane operator.  Tr. at 420.  He then opines that Plaintiff's pain would require him to miss work more than four times per month.  Tr. at 420.  Although the opinion that Plaintiff "was unlikely to be able to be gainfully employed full time" is one reserved for the Commissioner, the remainder of his opinion appropriately should be considered.  Accordingly, the undersigned will consider whether the opinion falls within the purview of 20 C.F.R. § 404.970.

In his decision, the ALJ referenced Plaintiff's treatment by several physicians, including Dr. Nolan.  He noted that Dr. Nolan had treated Plaintiff in 2005 and 2006 and had indicated Plaintiff's condition was improving after his surgery.  Tr. at 21.  The decision did not reference Dr. Nolan again, and focused on opinions of other treating physicians.

At the September 2008 hearing, the ALJ indicated that he planned to obtain a consultative report so that he would have more recent medical evidence available when considering Plaintiff's disability.  Tr. at 45.  Dr. Tountas provided such a report in October 2008, and the ALJ discusses Dr. Tountas's October 2008 findings in his decision.  Tr. at 21. On this record, the undersigned does not find it appropriate to speculate that nothing Plaintiff could have stated or provided at a supplemental hearing would have impacted the ALJ's consideration of Dr. Tountas's opinion or that the ALJ would have dismissed Dr. Nolan's 2009 opinion out of hand.

The ALJ indicated he wanted more recent medical information.  Dr. Nolan had been treating Plaintiff since 2005 and issued an opinion in January 2009.  This opinion of a treating physician was much closer to the time of the hearing and decision than any other evidence except Dr. Tountas's report. The undersigned is of the opinion that this additional evidence is "new and material" and relates to the time before the ALJ issued his decision.  Because he did not schedule the hearing he indicated he would hold if Plaintiff so requested, the ALJ did not receive this evidence.  Further, although the Appeals Council received it, it found only that it "considered the reasons you disagree with the decision and the additional evidence listed, [and] found that this information does not provide a basis for changing the Administrative Law

Judge's decision." Tr. at 1  3.

The undersigned agrees with Plaintiff that the failure to conduct a supplemental hearing and the Appeals Council's perfunctory consideration and rejection of additional evidence Plaintiff planned to submit constitute error that harmed Plaintiff.   In reviewing the Commissioner's determination of disability, the court must determine whether the factual conclusions of the ALJ are supported by substantial evidence.   The court is not to weigh the evidence or substitute its own judgment for that of the Commissioner.  *See generally Hays v. Sullivan*, 907 F.2d at 1456 (noting judicial review limited to determining whether findings supported by substantial evidence and whether correct law was applied); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."); *Jordan v. Califano*, 582 F.2d 1333, 1335 (4th Cir. 1978) ("A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court[.]"); *Arnold v. Sec'y of H. E. W.*, 567 F.2d 258, 259 (4th Cir. 1977) (noting that, unless Commissioner "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.") (internal quotation omitted).

The Commissioner would have the court affirm by engaging in speculation as to what the ALJ may have heard and decided at a supplemental hearing and as to what weight the ALJ would have given Dr. Nolan's new opinion. The Appeals Council's ruling provides no

information regarding why it rejected the opinion. Speculation is insufficient for the court to perform its duty of determining whether the decision is based on substantial evidence. The court is not to examine the additional evidence de novo, but it cannot meaningfully review the Commissioner's decision without speculating and analyzing the new evidence under these circumstances.

The undersigned notes that the parties have not briefed the issue of whether the Appeals Council erred by not providing reasons for rejecting the new evidence from Dr. Nolan. However, the Commissioner argues that Plaintiff was not prejudiced by the ALJ's failing to conduct a supplemental hearing, arguing in part that Plaintiff was not prejudiced because the Appeals Council considered the additional evidence Plaintiff would have provided to the ALJ at a supplemental hearing. Further, Plaintiff claims he was prejudiced and denied due process because he was not afforded the opportunity to address the Dr. Tountas opinion at a supplemental hearing and was prejudiced because the ALJ never received the additional evidence and the Appeals Council never commented on it. Because the ALJ did not conduct a supplemental hearing and did not receive Plaintiff's additional evidence, and because the Appeals Council did not comment on the additional opinion, the undersigned is of the opinion that remand is necessary.

The undersigned notes that there is a split of authority in the Fourth Circuit regarding whether the Appeals Council's failure to articulate its reasons for rejecting new evidence is error. *See, e.g., Ferguson v. Astrue*, C/A No. 4:09-3310-RMG, 2010 WL 5439755 (D.S.C. Dec. 28, 2010); *Belue v. Astrue*, C/A No. 1:09-942-MBS, 2010 WL 3734714 at * 3 (D.S.C. Sept. 20,

2010) (remanding for specific findings from appeals council); *Roberts v. Astrue*, C/A No. 0:09-1607-JFA, 2010 WL 2522995 (D.S.C. May 14, 2010); *Jackson v. Astrue*, C/A No. 0:08-579-CMC, 2009 WL 1181178 (D.S.C. May 1, 2009); *Suber v. Comm'r of Soc. Sec. Admin.*, 640 F. Supp. 2d 684 (D.S.C. 2009); *Harmon v. Apfel*, 103 F. Supp. 2d 869, 874 (D.S.C. 2000) (remanding for findings because ALJ "'never had the benefit of considering [the new] evidence,'" and reviewing court "'left in the dark as to how the Appeals Council treated the new evidence,'" making a "'meaningful judicial review impossible.'") (*quoting Riley v. Apfel*, 88 F. Supp. 2d 572, 579  80 (W.D. Va. 1998)); *but see Hollar v. Comm'r of Soc. Sec. Admin.*, No. 98-2748, 1999 WL 753999 (4th Cir. Sept. 23, 1999) (unpublished) (finding no error in Appeals Council's not providing detailed reasons for determining additional evidence did not warrant change in ALJ's decision).

Under the facts of this case, the undersigned finds it is unable to perform its statutory function based on the current record and recommends that Plaintiff's case be remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, it is recommended that the ALJ be required to permit Plaintiff to respond to Dr. Tountas's report, which may include presentation of the new opinion of Dr. Nolan to the ALJ.  After such an opportunity, the ALJ shall render a decision discussing the evidence and articulating reasons for his findings.  The court will then be in a position to determine whether the Commissioner's decision is supported by substantial evidence.  Based on this recommendation, the court will not address Plaintiff's remaining arguments at this time.

24

III.    Conclusion and Recommendation

Based on the above, the undersigned recommends that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action as set out herein.

IT IS SO RECOMMENDED.

March 21, 2011                          Shiva V. Hodges
Florence, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

25